**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DENNIS DOUZART and** | § | |
| **FAITH SEAWRIGHT DOUZART** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil Action No. 1:07CV1057-LG-RHW** |
| | § | |
| **BALOA INSURANCE COMPANY and** | § | |
| **DEFENDANT DOES 1 - 10** | § | **DEFENDANTS** |

**ORDER DENYING BALBOA INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [25] filed by the

defendant, Balboa Insurance Company.  The plaintiffs, Dennis Douzart and Faith Seawright,[1]

have responded to the Motion, and Balboa has replied.  Upon reviewing the submissions of the

parties and the relevant law, the Court finds that there is a genuine issue of material fact

regarding whether the plaintiffs are entitled to coverage under the homeowner's insurance policy

issued to them by Balboa.

### FACTS

On August 29, 2005, the plaintiffs' home, which was located at 6077 Railroad Avenue,

Bay St. Louis, Mississippi, was destroyed by Hurricane Katrina.  The plaintiffs filed a claim

under their Balboa insurance policy.  On December 12, 2005, Balboa sent a letter to the

plaintiffs, denying the claim.  The letter explained:

> Our investigation confirmed extensive wind damage to the dwelling as well as
> significant water damage to the interior walls and ceilings as well as to the
> personal property items contained in the dwelling.  It has been reported that
> the weather conditions in your area during the hurricane included significant
> gusts of winds as well as approximately 15 to 20 feet of surging tidal waters.

---

[1] Faith Seawright's name was incorrectly listed as "Faith Seawright Douzart" in the
Complaint, and the error has not been corrected.

> The damages sustained to your dwelling were caused by the declared
> Hurricane Katrina combined with a surge of tidal water created by the strong
> wind conditions.  The policy does not provide coverage for windstorms, hail
> or flooding.

(Ex. 4 to Ex. C to Def.'s Mot.)  The plaintiffs responded to the denial letter, pointing out that

Balboa had based its conclusion on the inspection of part of a neighbor's home that was in the

middle of the debris that was formerly the plaintiffs' home.  (Ex. 1 to Pls.' Resp.)  While the

denial letter referred to damage to the interior walls, ceilings, and personal property inside the

home, all that remained of the plaintiffs' home was a pile of wood and debris.  (*See id.*)  No

ceilings, interior walls, or personal property remained.  (*See id.*)  The plaintiffs also informed

Balboa that their home had exploded as a result of the wind before the storm surge arrived.  (*Id.*)

The plaintiffs contend that Balboa never returned to reinspect the damage to their home after

learning that the wrong home was inspected.

      The Wind or Hail Exclusion Endorsement in the policy provides:

> SECTION I – PERILS INSURED AGAINST
> In all forms, coverage for the peril of windstorm or hail is deleted.
> SECTION I – EXCLUSIONS
> The following exclusion is added.  In Forms HO 00 03 and HO 00 05, it is
> added to Paragraph A:
> > Windstorm or Hail
> > **However, this exclusion does not apply to direct loss by fire or
> > explosion resulting from windstorm or hail.**
> All other provisions of this policy apply.

(Ex. E to Def.'s Mot.) (emphasis added).

      The plaintiffs filed this lawsuit on August 30, 2007, asserting that Balboa acted in bad

faith when it denied their claim.  Balboa has filed a Motion for Summary Judgment, asserting

that there is no genuine issue of material fact that the damage to the plaintiffs' home was not

-2-

caused by an explosion.

Discussion

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

"Insurance policies are contracts, and as such, they are to be enforced according to their provisions . . . . When parties to a contract make mutual promises (barring some defense or condition which excuses performance), they are entitled to the benefit of their bargain." *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 859 (¶16) (Miss. 2007) (quoting *Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1163 (Miss. 2004)). When the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written, but ambiguous or unclear policy language must be resolved in favor of the insured. *Anglin*, 956 So. 2d at 859.

The Mississippi Courts have not discussed the meaning of the term "explosion" in an insurance policy, but the Fifth Circuit, while interpreting Texas law, has provided the following

-3-

analysis:

> The term "explosion" has been defined in various ways and usually in general
> terms . . . .  It has been said to be synonymous with bursting.  It appears that
> the Texas courts have not attempted the formulation of an all inclusive and
> fixed definition of the term "explosion" but rather have sought to give it a
> meaning in accord with common understanding on a case-to-case basis.  The
> cases, not involving combustion, which have considered the meaning of the
> term vary in their factual situations and provide only a general concept of
> explosion.  However, the occurrences which the cases speak of as explosions
> possess a common characteristic.  In each instance, a confined substance
> suddenly and with varying degrees of violence breaks pressure . . . .  The
> common understanding of the term "explosion" includes the notion of a
> bursting caused by an internal force or pressure . . . .
>
> Although the cases admit that "explosion" is a term insusceptible of fixed
> definition, they make it clear that in order for an occurrence to constitute an
> explosion there must be a sudden breaking forth of a confined substance as a
> result of an internal force.

*Am. Cas. Co. of Reading, Pa. v. Myrick*, 304 F.2d 179, 182-83 (5th Cir. 1962) (internal citations

omitted).  In another opinion, the Court stated:

> An explosion is a rapid, sudden, and violent expansion of air or
> relinquishment of energy, causing a rupture and accompanied by a loud noise,
> not necessarily extremely loud.  Fire is perhaps the principal cause of
> explosions but they may be produced without the aid of fire . . . .  Even severe
> frost often causes trees to explode.  It has been said that there is no difference
> in ordinary usage between explode and burst; the ordinary idea is that the
> explosion is the cause, while the rupture is the effect.

*Commercial Union Fire Ins. Co. of N. Y. v. Bank of Ga.*, 197 F.2d 455, 456 (5th Cir. 1952).  The

Court in *Bank of Ga.* used the following illustration:

> Everyone knows the difference between a blow-out and a puncture in an
> automobile tire.  The blow-out is a small explosion, while ordinarily the puncture
> merely causes a leak.  The question in this case is whether there was a big leak or
> an explosion . . . .

*Bank of Ga.*, 197 F.2d at 457.

-4-

The Court in this case is presented with a similar question.  The plaintiffs assert that the damage to their home was caused by an explosion that resulted from the accumulation of air inside their home during Hurricane Katrina.  However, Balboa asserts that the destruction of the plaintiff's home was not an explosion because the process occurred over a five hour period. Balboa contends that testimony given by the plaintiffs' expert architectural engineer, Neil B. Hall, supports its contention.  Hall summarized his opinions in an Affidavit presented to the Court:

> Wind broke window glass and removed portions of the roof structure, allowing wind to breach the building structure and overpressure the interior space.
>
> Overpressure inside the building interior resulted in a pressure differential between the inside and outside air.  As a result of this pressure differential, the building exploded leading to progressive failure of the entire structure.
>
> My use of the term "explosion" does not mean that the building "exploded" solely due to a sudden pressure drop outside the building.  I am well aware that FEMA funded research argues that buildings do not "explode" in this manner . . . .
>
> The building most likely did not "explode" in a matter of seconds . . . . However, to trigger progressive failure and the complete destruction of the building due to hurricane wind, it is most likely that some portion of the building did "explode" in a matter of seconds, followed by the progressive failure of the structure in the time remaining before the arrival of storm surge.

(Ex. 6 to Pls.' Resp.)  At his deposition, Hall testified that the window glass broke at about 3:30 a.m. on August 29, 2005; the sheathing lifted at 5:00 a.m.; the walls would have fallen at around 7:15 a.m.; the house was completely destroyed by 8:00 a.m.; and the storm surge arrived at about 8:30 a.m.  (Ex. 7 to Pls.' Resp. at 17-20)  Hall arrived at these conclusions by determining the wind speed necessary to cause each type of damage, and by determining the time at which the

wind would have reached each of those speeds.  (*Id.*)  After being questioned regarding whether this process could be considered the sudden breaking of a confined substance, Hall explained:

> [I]n this case, what only took a second is that roof to uplift.  Once that roof uplifts, it sets into motion a series of progressive events that occurred.
>
> If the ensuing damage from the explosion I've described to the roof is part of the explosion, then everything I've described to you is part of the explosion. If you're going to limit me to the uplift of the plywood and say that the ensuing damage that occurred as a result of that explosion is of no consequence, then I would admit to you that only the – the initial uplift of the– of the plywood is the explosion.

(Ex. 7 to Pls.' Resp. at 20).

Balboa asserts that Hall does not describe the sudden breaking forth of a confined substance, but the gradual destruction of the plaintiffs' home as a result of increasing wind speeds.  However, Hall clarified that, at the very least, the "uplift" of the sheathing or plywood on the roof was the sudden breaking forth of air that had become confined in the plaintiffs' home. Therefore, his testimony creates a genuine issue of material fact regarding whether all or part of the damage to the plaintiffs' home was caused by an explosion that resulted from a windstorm.

Alternatively, Balboa asserts that it is entitled to summary judgment regarding the plaintiff's bad faith claim.  To recover punitive damages for bad faith denial of an insurance claim, an insured "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights."  *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (quoting *U. S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992)).  The insurer "need only show that it had reasonable justifications, either in fact or in law, to deny payment." *Id.*

The Court finds that a genuine issue of material fact exists regarding whether Balboa had an arguable or legitimate basis for denying the plaintiffs' claim.  Specifically, the plaintiffs informed Balboa that its adjuster had inspected the wrong house, and they claim that Balboa did not return to conduct an inspection of the remnants of the correct home in order to determine whether the home was damaged in whole or in part by an explosion resulting from a windstorm. Additionally, Balboa has not submitted any evidence that it returned to conduct an inspection of the correct house or any evidence that an inspection of the correct house would have led to the determination that coverage was precluded.  Balboa only relies on the report and testimony of the plaintiffs' expert, which when viewed in the light most favorable to the plaintiffs, creates a genuine issue of material fact regarding whether coverage existed under the policy.  As a result, Balboa has not demonstrated that it had an arguable or legitimate basis for denying coverage under the policy.  Although it is a close question, this Court also cannot determine as a matter of law that Balboa did not act with gross negligence in disregard of its insureds' rights.  As a result, Balboa's Motion for Summary Judgment must be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [25] filed by the defendant, Balboa Insurance Company, is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 14th day of October, 2008.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

-7-